239 P.2d 360

**CORPORATION COMMISSION et al. v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES et al.**

No. 5338.

Supreme Court of Arizona.

Dec. 31, 1951.

Fred O. Wilson, Atty. Gen., Wilbert E. Dolph, Jr., Asst. Atty. Gen. (Edward Jacobson, Phoenix, Snell, Wilmer, Walsh, Melczer & Beauchamp, all of Phoenix, of counsel), for appellants.

Evans, Hull, Kitchel & Jenckes, Norman S. Hull and John E. Madden, all of Phoenix, for appellee.

LA PRADE, Justice.

This action was instituted by The Equitable Life Assurance Society of the United State, a mutual life insurance company, in its own behalf and on behalf of all other insurance companies similarly situated, to obtain a declaratory judgment determining and declaring the construction to be placed upon section 61–328, A.C.A.1939, as amended by ch. 113, S.L.1941, ch. 100, S.L.1945, imposing upon every insurance company doing business in Arizona, an annual tax of two (2) per cent of the gross amount of all premiums received on policies and contracts of insurance covering property or other risks within Arizona. From a judgment declaring that said statute, as amended, does not impose any tax upon considerations received on contracts of annuities by plaintiff and other insurance companies similarly situated and enjoining defendants (agents of the state of Arizona) from collecting or attempting to collect such tax and from withholding or revoking any certificate of authority or license by reason of the nonpayment thereof, the corporation commission and other named defendants have appealed.

The question presented is one of statutory construction to determine the legislative intent from the wording of the statute. The portion of section 61–328, upon which the state relies to tax payments for annuities, reads as follows: "(b) Every insurance company doing business in this state except those companies engaged in the class of insurance business described in paragraph 11, section 61–102, Arizona Code of 1939 (title insurance), shall pay to the state treasurer, through the commission, *a tax of two [2] per cent of the gross amount of all premiums received on policies and contracts of insurance covering property or other risks within this state* * * * The tax * * * shall be payment in full of all demands of any and all taxes on said

company or of licenses for conducting said business of insurance, except the fees prescribed for agents' licenses and for the commission, and the tax prescribed in section 61–340 [on non-admitted companies]." (Emp. and bracketed matter supplied.) For the purpose of clarity, we believe that it should be pointed out right here, that the underscored words in the above section, to wit: "a tax of two [2] per cent of the gross amount of all premiums received on policies and contracts of insurance covering property or other risks within this state" was first inserted in the law by the amendment appearing in chapter 113, Session Laws 1941, section 3. The law prior to the amendment read that every company should pay "a tax of two [2] per cent of all premiums collected or contracted for in this state during the year ending December 31 next preceding * * *"

▉▉ The assignment of error is based on the contention that the above-quoted statute was intended to and does levy a valid tax upon insurance companies for considerations received from annuity policies. The several propositions of law presented in support of the assignment will be severally examined and treated.

Proposition of law No. 1 states: "The prime rule of statutory construction is to arrive at the legislative intent." We agree that to determine the legislative intent is a cardinal rule of statutory construction. Just how that intent may be determined requires careful reading and consideration of the statutory language. The state directs attention to other statutes relating to insurance companies and points out that in the various provisions thereof no reference is made to annuities but they refer generally to "contracts of insurance". For a definition of "insurance" the company refers to section 61–101, A.C.A.1939, as amended: "'Insurance' means: A contract of insurance or an agreement by which one [1] party, for a consideration, promises to pay money or its equivalent or to do an act valuable to the insured upon the destruction, loss, or injury of something in which the insured has a pecuniary interest, or in consideration of a price paid, adequate to the risk, becomes security to the other against loss by certain specified risks;" We observe that this definition does not mention or refer to annuity contracts. A similar statute was construed by the Supreme Court of Oregon as not including a contract of annuity in the definition of "insurance". Hall v. Metropolitan Life Ins. Co., 146 Or. 32, 28 P.2d 875, 876. Counsel for the state review the history of the insurance code, quoting from section 3423, R.S.1913, wherein insurance business was classified as follows: "(2) *Life insurance*, including endowments or *annuities*, but not including health or accident or sickness insurance, or any casualty insurance except as hereinafter provided." (Emp. sup.) The comparable code, section 61–102, A.C.A.1939, as amended by S.L.1949, ch. 116, sec. 1, reads: "2. Life insurance, which

includes insurance upon the lives of persons or appertaining thereto, *and* the granting, purchasing, or disposing of *annuities*." (Emp. sup.) It is significant that the language was changed from *including* annuities within the term "life insurance" to a separate classification using the conjunction "*and*" in the amendment. It is generally recognized that contracts for annuities differ from life insurance policies. 29 Am. Jur., Insurance 52, sec. 6; 3 C.J.S., Annuities, § 1, page 1375; Carroll v. Equitable Life Assur. Soc. of United States, D.C.Mo., 9 F.Supp. 223, 224; Rishel v. Pacific Mut. Life Ins. Co. of California, 10 Cir., 78 F.2d 881, 131 A.L.R. 414; Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 510, 98 A. 1072, 1073, wherein an annuity contract is distinguished from an insurance contract in the following language: "Insurance, as generally understood, is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The consideration for an insurance contract is generally spoken of as a premium, which is payable annually, semiannually, monthly, or weekly. The consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment." The distinction between annuities and life insurance was pointed out in the following cases:

"Annuity contract differs from life policy in that the contract for 'Insurance' provides against contingency of death, while an 'annuity' is a provision for life with no indemnity feature." In re Sothern's Estate, 170 Misc. 805, 14 N.Y.S.2d 509, 512.

" 'Annuity' and 'insurance' are opposites in that one neutralizes the risk customarily inherent in the other, and from the insurer's viewpoint, 'insurance' looks to longevity, while 'annuity' looks to transiency." Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 650, 85 L.Ed. 996.

" 'Annuity' is a provision for life with no indemnity feature, and 'insurance' is a provision against death and involves risk shifting and risk distributing, and is designed to shift risk of premature death of the one upon whom the beneficiaries were dependent for support, and 'annuity' and 'insurance' are opposites, and, from the insurance company's viewpoint, insurance looks to longevity, and annuity to transiency." In re Newton's Estate, 177 Misc. 877, 32 N.Y.S.2d 473, 474, 482.

■ ▆▆▆ The statute in question imposes a tax on "the gross amount of all premiums received on policies and contracts of insurance covering property or other risks within this state". Since annuities are not policies or contracts of insurance, the payments therefor are not generally regarded as "premiums" even though so called. The nature of a thing must be determined by what it is and not by what it is called. The annuities are not indemnities for

176

death but are investments for life. They are designed as safeguards against misfortune and want during the life of the annuitant and are essential provisions for life and not provisions for death.

The second proposition of law asserts: "Where a statute is found to be ambiguous, legislative intent may be gathered from statutes in pari materia, i. e., relating to the same subject matter." If a statute is ambiguous, it should be construed liberally in favor of the taxpayer and strictly against the state. Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363; Daniel v. Life Ins. Co. of Virginia, Tex.Civ.App., 102 S.W.2d 256. Giving consideration to other statutes in pari materia indicates a distinction in classification for purposes of valuation of life insurance and annuities, section 61–306, A.C.A.1939, as amended, and by definition in sections 61–101 and 61–102, as amended. This distinction was recognized by the corporation commission in the forms it prescribed for annual reports of insurance companies wherein considerations for annuities were reported in one schedule but not in the "Premium Tax" statement. While the practical interpretation of the law is not controlling, it is entitled to great weight, since the legislature has re-enacted the law with knowledge of such practical interpretation. Alvord v. State Tax Commission, supra; Haggard v. Industrial Comm., 71 Ariz. 91, 223 P.2d 915; State v. Davenport, 61 Ariz. 355, 149 P.2d 360;

State v. Boyd, 60 Ariz. 388, 138 P.2d 284; Conway v. Mosher, 55 Ariz. 467, 103 P.2d 465; Austin v. Barrett, 41 Ariz. 138, 16 P.2d 12.

The state's third proposition of law is: "Where present, a legislative definition of a word or phrase used in a statute is controlling." The statute defining "insurance" is quoted and the contention made that annuities fall logically and properly into the portion referring to "risks". Inasmuch as annuity contracts do not insure against loss by reason of death of the insured but rather constitute an "investment" of funds to be paid in installments during the life of the annuitant, they are not a "risk" based on the contingency of loss.

Proposition of law No. IV is presented in the following language: "All tax exemptions are construed strictly against the taxpayer and in favor of the taxing authority. Exemptions may not rest on implication alone." This statement is followed by historical development of the income tax statutes in Arizona exempting therefrom "income of insurance companies which pay to the state a tax upon premium income". It is contended that this exemption in effect excludes from taxation those companies paying a tax *on the business of insurance*. It is conceded by the company that in those states where a tax is imposed upon premiums received "for business done", the tax is properly applied to "considerations for annuities". Such was the ruling of the Iowa Supreme Court

in Northwestern Mut. Life Ins. Co. v. Murphy, 223 Iowa 333, 271 N.W. 899, 900, 902, 109 A.L.R. 1054, where the statute provided for a tax on the "gross amount of premiums received * * * for business done in this state". Code 1931, § 7022, I.C.A. § 432.1 note. Although the court held that " * * * the granting of annuities was taxable as a part of the business done in Iowa by insurance companies of plaintiff's status, for the year 1934" it recognized that annuity contracts are not insurance, saying: " * * * We think it is obvious, without discussion, that it should be conceded to plaintiff that these contracts * * lacked some of the essentials of, and in other respects differed from, life insurance contracts in the ordinary usage of those words and were in fact undertakings for the payment of annuities, and were not life insurance contracts."

Annuity considerations were held to be taxable in California within the statute taxing the "amount of the gross premiums upon its business done in this state * * *" Const. art. 13, § 14(b), but the court placed its decision on the ground that annuity contracts were part of the "business done" within the state. Equitable Life Assur. Soc. of United States v. Johnson, 53 Cal. App.2d 49, 127 P.2d 95, 97.

The authorities are in conflict where the statutes construed referred to "premiums received". In State v. Equitable Life Assur. Soc., 68 N.D. 641, 282 N.W. 411, 416, the statute imposed a tax upon the "gross amount of premiums received". Comp.Laws Supp.1925, § 4924. The Iowa case, Northwestern Mutual Life Ins. Co., supra, [223 Iowa 333, 271 N.W. 902] was distinguished, by pointing out the difference in that statute which taxes all "business done" thereby including annuities, whereas in North Dakota the statute did not define an annuity or refer to the consideration paid therefor as a "premium", and the court ruled considerations received on contracts of annuities were not within the tax measure. The Wyoming court ruled likewise in construing a statute which taxes each insurance company "upon the gross premiums received by it for insurance within this state". Rev.St.1931, § 115–117. State ex rel. Equitable Life Assur. Soc. of United States v. Ham, 54 Wyo. 148, 88 P.2d 484, 485. To the same effect was the decision in Daniel v. Life Ins. Co. of Virginia, Tex.Civ.App., 102 S.W.2d 256, 257 where it was said: " * * the words 'premiums on insurance' must be given their generally accepted meaning * * * in general parlance insurance does not include contracts of annuity. * * *" It was observed that statutes creating taxes are strictly construed and are not extended by implication beyond the clear import of the language used, the court saying: " ' * * * Such laws are to be interpreted liberally in favor of the taxpayer.' " Further, it was said: "Had the Legislature intended to include considerations paid for annuities within the amounts upon which the tax was to be computed, it

would have been a simple matter to so state. 'Doubt, if any arises, must be resolved against the right to make the exaction.' (citing case)"

The following excerpt from the dissenting opinion (4–3) in Equitable Life Assur. Soc. v. Hobbs, 154 Kan. 1, 114 P.2d 871, 882, 135 A.L.R. 1234, on this point is quite apt: "If the legislature, in the exercise of its wisdom, desires to tax annuity investments in the same manner as premiums for insurance, it may easily do so in plain and simple language. As long, however, as the question of legislative intent is not free from reasonable doubt, the uncertainty must, under well established principles, be resolved in favor of the taxpayer. * * *" Guardian Life Ins. Co. of America v. Joseph, 272 App.Div. 481, 71 N.Y.S.2d 396, 398, affirmed 297 N.Y. 976, 80 N.E.2d 360, held that moneys collected by an insurance company as annuity receipts from annuity contracts were not " 'receipts from premiums received in and from risks in New York City' ". While several cases have held that considerations for annuities were taxable as "premiums", the decisions have been by divided courts, and marked by strong dissenting opinions. Among them are Equitable Life Assur. Soc. v. Hobbs, supra, and State ex rel. Holt v. New York Life Ins. Co., 198 Ark. 820, 131 S.W.2d 639.

The decision by the New Hampshire Court in New York Life Ins. Co. v. Sullivan, 89 N.H. 21, 192 A. 297, 299, holding annuity considerations taxable, was based on a statute imposing the tax upon premiums received by foreign insurance companies "upon the business done within the state" during the preceding year. Laws 1909, c. 78. Likewise, the Supreme Court of Missouri, in State ex rel. Aetna Life Ins. Co. v. Lucas, 348 Mo. 286, 153 S.W.2d 10, 12, ruled that annuity considerations were taxable but we note the statute included the phrase "or on account of business done". RSMo 1949, § 148.340.

Our statute in Arizona in this respect is different. It does not refer to "business done in this state" but simply imposes a tax on "all premiums received on policies and contracts of insurance covering property or other risks within [Arizona]". We have reached the conclusion our legislature did not intend to include considerations for annuities in the term "premiums" but limited same to policies and contracts of insurance. Inasmuch as a taxing statute must be strictly construed, we cannot extend its application to include something not specifically covered by the language thereof.

The state's final contention that the law, as amended, was intended to and does levy a valid tax upon insurance companies for considerations received from annuity policies is based upon the proposition that the 1939 law required a payment of two (2) per cent of *all premiums* collected or contracted for, whether for insurance or annuities. It is argued that the

1941 amendment, requiring tax to be paid on "all premiums received on policies and contracts of insurance covering property or other risks", was for clarification only, and that the real intention of the legislature was to tax all premiums, including considerations (premiums) paid for annuities. It is argued that the trial court was misled into conceiving that the tax was to be levied only on premiums received on policies and contracts of insurance covering property or other risks. We do not join in this view that the trial court was misled nor do we believe that these words of limitation are misleading us. The only purpose in expanding the statute by inserting these words of limitation was to make it more definite and certain. It is our view the additional words were descriptive of "insurance" premiums and thereby clarified the meaning so that annuity considerations would not be included in the term "premiums". The element of "risk" is not present in annuity contracts as it is in life insurance or insurance on property. Risk refers to a hazard which is not an element of an annuity contract, and involves a chance of loss not present in such a contract, as it is in a policy of insurance. In life insurance the risk is death, upon which the face amount of the policy becomes immediately due and payable to a named beneficiary; in an annuity, the death of the annuitant simply terminates the payments due him and the obligation of the company issuing the annuity is end-ed. In clarifying the law by the revision or amendment thereof, the legislature did not mention "annuities" which it might well have done had it intended they be included. Not having done so, it is our opinion the tax is applicable to premiums on insurance but does not impose any tax upon considerations for annuities, and the trial court did not err in so declaring.

Judgment affirmed.

UDALL, C. J., STANFORD, PHELPS, JJ., and BERNSTEIN, Superior Court Judge, concur.

DE CONCINI, J., being disqualified, the Honorable CHARLES C. BERNSTEIN, Judge of the Superior Court, Maricopa County, was called to sit in his stead.